647 So.2d 1086 (1994)
Jennie LOMBARDO
v.
Calvin Lee DESHOTEL.
No. 94-C-1172.
Supreme Court of Louisiana.
November 30, 1994.
*1088 James Brady, Onebane, Donohoe, Bernard, Torian, Diaz, Lafayette, for plaintiff.
Russel J. Cremaldi, Briggs, Towbridge, Supple & Cremaldi, Adolph B. Curet, III, Franklin, for respondent.
DENNIS, Justice.[*]

Principal Issue
In this case we are required to decide whether a seller who fails in her attempt to obtain specific performance of a real estate purchase contract because that remedy becomes impracticable, is bound by a stipulation of damages clause in the agreement when she sues the defaulting purchaser for damages, unless the stipulated damages are so manifestly unreasonable as to be contrary to public policy. An ancillary issue is whether the seller who has entered such a stipulation of damages is required to mitigate her damage to protect the obligor from reasonably avoidable consequential damages.

Summary of Proceedings and Our Decision
In an October 1, 1985 real estate purchase agreement, the parties stipulated that, if the purchaser failed or delayed in performance, the seller would have the right to demand specific performance or to declare a $1,000 deposit by the purchaser forfeited. When the purchaser failed to perform, the seller sued for specific performance but subsequently sold the property to a third person for a sum substantially below the purchase agreement's sale price and amended the suit to pray that damages be fixed by the court rather than according to the stipulated damages clause. The trial court concluded that the seller was required to sell to the third person by her duty to mitigate her damage, the sale made specific performance of the purchase agreement impracticable, and therefore, the seller was released from the obligation imposed by the stipulated damages clause and entitled to recover damages as fixed by the court. The trial court awarded the seller $25,000 in damages. The court of appeal reversed, Lombardo v. Deshotel, (unpublished) 92 CA 2182, 637 So.2d 182 (Table) (La.App. 1st Cir.1994), holding that the seller was bound by the stipulated damages clause and reducing the damages award to $1,000.
We affirm the principal holding and decision of the court of appeal. The court of appeal was correct in concluding that the seller was bound by the stipulated damages clause agreed upon by the parties to the real estate purchase agreement. The trial court erred in awarding court-determined damages. (1) The seller was bound by the stipulated damages clause. Under Civil Code Article 1986, the seller could enforce her right to damages when her right to specific performance became impracticable, but this article must be read in pari materia with Article 2012 which provides that stipulated damages cannot be modified by the court unless they are so unreasonable as to be contrary to public policy. (2) Also, because of the stipulated damages clause, the seller was not required to mitigate the damage caused by the purchaser's failure to perform.

*1089 Expanded Statement of Facts and Proceedings Below
On October 1, 1985, the plaintiff, Jennie Lombardo as seller, and the defendant, Calvin Lee Deshotel as buyer, signed an agreement to purchase or sell a piece of property located in Franklin, Louisiana. The price agreed upon by the parties was $115,000. The contract contained a clause that provided that "[i]n the event the purchaser fails to comply with this Agreement within the time specified, the seller shall have the right to declare the deposit * * * fortified [sic] * * * or the seller may demand specific performance." Initially, the sale was to take place on or before November 15, 1985 but it was subsequently postponed by agreement to December 5, 1985. When the date of closing arrived Lombardo was prepared to tender title but Deshotel refused to purchase the property.
On March 26, 1986, Lombardo filed suit against Deshotel for specific performance alleging Deshotel's breach of the contract. While the suit for specific performance was pending, Lombardo sold the property to third parties for $90,000. Thereafter, on September 12, 1986, Lombardo amended her petition to request damages from Deshotel, including the difference between the price agreed upon in the contract and the price she obtained in the subsequent sale. Lombardo alleged that she had sold the property in mitigation of her damages.
Pursuant to a motion for summary judgment filed by Deshotel, the trial court dismissed Lombardo's claims against him. Lombardo devolutively appealed the trial court's judgment and the First Circuit Court of Appeal reversed and remanded the matter to the trial court for further proceedings. Lombardo v. Deshotel, (unpublished) 89 CA 0555, 562 So.2d 478 (Table) (La.App. 1st Cir. 1990).
After a trial on the Merits, the trial court rendered judgment in favor of Lombardo and against Deshotel for the sum of $25,000. The trial court found that the sale of the property was justified as fulfillment of Lombardo's duty to mitigate her damage, the sale made specific performance impracticable, and this in turn entitled Lombardo to court-determined damages rather than her stipulated damages. Deshotel appealed. The court of appeal reduced Lombardo's award to $1,000 in damages, the retention of the deposit, and affirmed the trial court judgment in all other respects. The court of appeal reasoned that because Lombardo and Deshotel stipulated to the amount of damages to be recovered in case of Deshotel's nonperformance, the stipulated amount ($1,000), is the compensation provided by law for the damage sustained. Lombardo v. Deshotel, (unpublished) 92 CA 2182, 637 So.2d 182 (Table) (La.App. 1st Cir. 1994).
On or about September 22, 1993, Larry Lombardo, Louis Lombardo, Rose Marie Charpentier, Linda Domino, and Monica Davis filed a motion to substitute parties, alleging that their mother, Jennie Lombardo, had died. By order of that date, the court of appeal ordered them substituted for Jennie Lombardo as Plaintiffs.
Certiorari was granted to consider whether the court of appeal was correct in strictly enforcing the stipulation of damages clause agreed upon by the parties and in rejecting the trial court's rationale that the seller was released from any obligation under the clause by her duty to mitigate damages and the impracticability of specific enforcement caused by her sale of the property to a third person. Lombardo v. Deshotel, 639 So.2d 1179 (1994) We conclude that the court of appeal's judgment is essentially correct.

Civil Code Principles
Obligations and contracts are distinct legal concepts. The nature and effect of the obligation is that of a bond between two persons imposed by the Code or other law whereby one of them, the creditor or obligee, is entitled to demand from the other, the debtor or obligor, the performance of a duty. 1 Litvinoff, Obligations § 1 (6 Civil Law Treatise 1969) The effect of contracts is to give birth to, to modify, or to extinguish obligations. Cf., 2 Planiol, Civil Law Treatise, Part 1 no. 163 (La.St.L.Inst. trans.,) The parties by their contract bring a legal bond into being between them, but the law supplies the substance of the obligation, except as validly modified by them, and the machinery *1090 in order to provide enforcement. 1 Litvinoff, Obligations § 75 (6 Civil Law Treatise 1969), citing 6 Toullier, Le Droit Civil Francais Suivant L'Orde du Code 2 (6th ed. Durvergier undated) and discussing Civil Code Articles 1760 and 2292 (1870); Id. § 45. The distinction between obligations and contracts is important to the interpretation of the Civil Code; especially, Book III, Title IV, Chapter 8 entitled "Effects of Conventional Obligations," which deals interchangeably with the effects of obligations and the effects of contracts. C.C. Arts. 1983-2021; 2 Litvinoff § 1; 2 Planiol no. 163. The distinction is very important in the present case, also, because the contract involved here does not modify significantly the obligations imposed by the Code. Consequently, the present case is governed essentially by the normal obligations precepts of the Civil Code.
The two major rights of the creditor of an obligation are: (1) The right to exact, insofar as practicable, specific performance. C.C. Art. 1986; 2 Planiol no. 164; 2 Litvinoff § 7; (2) The right to obtain an indemnity in money, referred to as damages, in case of inexecution or delay in the execution. C.C. Art. 1994; 2 Planiol no. 164; 2 Litvinoff § 8. In cases of non-performance, the monetary indemnity is for the damage suffered by the creditor as a result of the non-performance of the obligation; it is clear therefore, that such indemnity can never be cumulated with actual performance. C.C. Art. 2007; Cf. 2 Planiol no. 257; 2 Litvinoff § 9.
Above all others, the creditor enjoys the right to demand, insofar as is practicable, the specific performance of the obligation. Here, however, the distinction between obligations to do or not to do is of great moment, since an obligation to give a thing is always susceptible of forced executionunless, of course, performance has become impossible or impracticablewhile this is not always the case with an obligation to do, or one not to do, where the liberal principle of modern law that prevents laying hands on a person to force him physically to do something is always taken into account. Civil Code Article 1986; 2 Litvinoff § 7.
When the creditor elects to sue the debtor for damages, when specific performance is impracticable, or when the court refuses within its discretion to grant specific performance of an obligation to do, the fixing of the amount of the indemnity accorded as damages is made in two ways: (1) By the court, after the non-performance is established. C.C. Art. 1999; 2 Planiol no. 246; or (2) By the parties themselves, in advance, by a stipulated damages clause inserted in the contract. C.C. Art. 2005; Cf., 2 Planiol no. 246; See 4 Aubry et Rau, Droit Civil Francais, in 1 Civil Law Translations pp. 91-92 and pp. 120-122 (1965) The sum stipulated in the clause replaces the need for the damages to be set by the court. Stipulated damages may not be modified by the court unless they are so manifestly unreasonable as to be contrary to public policy, C.C. Art. 2012; Cf., 2 Planiol nos. 255-266; 4 Aubry et Rau at 121-122; 2 Litvinoff § 9, or if the obligor has partially performed. C.C. Art. 2011.

Application of Principles to Case at Bar
It is undisputed by the parties that the deposit provision of the purchase agreement is a stipulated damages clause. Moreover, the clause contains the essential ingredients of a stipulation of damages: it was stipulated in advance by the parties, provides the sum to be recovered in case of nonperformance, and gives rise to a secondary obligation for the purpose of enforcing the principal one. C.C. Art. 2005.
In light of the foregoing, and applying the legal principles to the case at bar, we conclude that the seller was bound by the stipulation of damages unless it has been shown to be so manifestly unreasonable as to be contrary to public policy. According to the language and structure of the code, the interpretation of its articles in pari materia rather than disconnectedly, and the doctrinal commentary, the obligee who has entered a stipulation of damages (i) is bound by the stipulation of damages even though she preferred to seek specific performance and asked for enforcement of her right to damages only after performance became impracticable, unless the stipulated damages are so manifestly unreasonable as to be contrary *1091 to public policy; and (ii) is not required to mitigate the damage caused by the obligor's failure to perform because the obligor may not demand that the damages be reduced when the obligee fails to make these efforts.

(i)
We see nothing in the Civil Code that makes the obligee's duty under a stipulation of damages any less binding when she chooses damages as her second rather than her first recourse among creditors' rights. Reading the words in context, the articles in pari materia, and the code as a whole, C.C. Arts. 12 and 13; Yiannopoulos, Louisiana Civil Law System, Part 1 § 46(c); 2 Planiol no. 220; it is clear that the stipulation of damages fixes the amount recoverable regardless of the route by which the obligee comes to the enforcement of the right to damages. Civil Code Article 2007 provides that "[a]n obligee may demand either the stipulated damages or performance of the principal obligation, but he may not demand both unless the damages have been stipulated for mere delay." There is nothing in this article or the other code provisions to indicate that the obligee's unsuccessful demand of performance relieves him of his obligation and duty under the stipulation of damages articles. There are a number of instances in which the obligee's attempts to specifically enforce the obligation might be rebuffed because specific performance is impracticable or because the obligation the obligor has failed to perform is an obligation to do. For examples, see Civil Code Article 1986, Revision Comments1984 (b) & (c); J. Weingarten, Inc. v. Northgate Mall, Inc., 404 So.2d 896 (La.1981). To interpret the Code Articles disjointedly so as to release obligees from their stipulation of damages simply because they have brought unsuccessful specific performance actions would lead to absurd consequences. Only obligors would be bound by stipulations of damages, rendering Articles 2005-2012 of the Code useless.
The evident intent of the redactors and the legislators, on the other hand, was to make the stipulation of damages clause more useful and predictable than before the 1984 revision of the obligations provisions. Civil Code Articles 2117-2129 (1870) closely followed Articles 1226-1233 of the Code Napoleon based on nineteenth century laissez-faire ideas, including the notion that the parties to a contract should be held to their agreed estimate of damages no matter what the circumstances. Exposé Des Motifs, La.Civ. Code Ann., vol. 8-9 p. 45. Although early decisions followed the strict approach of the Civil Code, later cases moved toward the common-law distinction between penalties and liquidated damages by holding that penal clauses are enforceable only if they were reasonably related to actual damages. Id. at 47. Ultimately, this court's decision in Pennington v. Drews, 218 La. 258, 49 So.2d 5 (1949) said that the expression "penal clause" as used in the Civil Code of 1870, was synonymous with "liquidated damages." This led to Louisiana courts asserting their power, in the absence of an expression of legislative will, to modify stipulated damages clauses by equating them with common-law "liquidated damages." Esposé Des Motifs, La.Civ.Code Ann., vol. 8-9 p. 47. The 1984 revision articles attempt to put and end to the confusion and inconsistency that have resulted from the courts' virtual disregard of the Civil Code provisions on stipulated damages. At the same time, the redactors recognized some merit in the court's perception of the need to be able to modify clauses of this kind in certain situations. Therefore, Article 2012 (1985) provides that stipulated damages may not be modified by the court unless they are so manifestly unreasonable as to be contrary to public policy. Article 2012 thus gives legislative sanction to the judicial prerogative to modify stipulated damages clauses, but it limits and channels that discretion to situations in which the stipulated damages are so disproportionate as to be contrary to public policy. The main tenet of Article 2012 is in harmony with classic civilian theory, and it is consistent with the solution adopted in modern codes and followed by recent Continental jurisprudence. Exposé Des Motifs, La.Civ. Code Ann., vol. 8-9 p. 47 (citations of authorities omitted).
Neither Lombardo nor Deshotel has contended that the stipulated damages are so manifestly unreasonable as to be contrary to *1092 public policy. Therefore, we do not reach that issue in the present case.
(ii)
Civil Code Article 2002 provides:
An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced.
This Article adjusts the conflict of interests that would otherwise exist when an obligee neglects to mitigate his damages and thereby exposes the obligor to further liability for consequences resulting from the obligor's failure to perform that were reasonably avoidable by the obligee. When the parties have stipulated the damages to be recovered in case of inexecution of an obligation, however, this conflict does not arise. The obligee can recover no more nor less than the stipulated damages regardless of the amount of the damage or the consequences caused by the obligee's neglect. Consequently, because the seller, Lombardo, could not suffer a reduction of her stipulated damages and therefore owed no duty to mitigate her damage to the purchaser, Deshotel, the doctrine of mitigation did not afford Lombardo any justification for selling the property to a third person, for aborting the specific performance action, or for avoiding her obligation or duty under the stipulation.
Finally, we agree with the court of appeal that the clause in the real estate purchase agreement relating to the real estate agent's commission and fees and costs incurred in enforcing collection and damages does not override the stipulation of damages or release the seller from her reciprocal obligations and duties thereunder. Clearly, the commission, fees and costs clause is auxiliary to the enforcement of the stipulation of damages clause and other major provisions of the contract and does not supersede them.
Consequently, we conclude that the seller, Lombardo, was bound by the stipulation of damages clause that she agreed to in advance with the purchaser, Deshotel. She was not excused from her reciprocal duty under this obligation simply because she sought to enforce her right to performance of the obligation before resorting to her right to damages.
For the reasons assigned, the judgment of the court of appeal is affirmed.
AFFIRMED.
LEMMON, J., concurs and assigns reasons.
NOTES
[*] Judge Felicia Toney Williams, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, effective September 1, 1994.

Marcus, J., not on panel. Rule IV, Part 2, § 3.