11 GREMILLION, Judge.
The plaintiff, the International Brotherhood of Electrical Workers Local Union No. 576, appeals the decision of the trial court in favor of the defendant, Kenneth R. Bunting, and dismissing its suit against him. After reviewing the record, we reverse, reducing the amount of the fines imposed and the number of offenses Bunting was charged with, and award attorney’s fees.
FACTS
On March 1, 1995, Gregoiy York, a member and officer of Local Union No. 576, observed Bunting, also a member of the union, driving a truck rigged out for electrical work. Recalling that Bunting had recently been laid off and knowing there had been no calls for work through the local hall, York followed Bunting to discover his employer. When Bunting reached' the parking lot of the Borden Chemical Company, York questioned him and found out that he and another union member, |2Jimmy Harms, were working for Langston Electric, a non-union electrical contractor. -, Knowing that a “salting” resolution [1] and the Inside Electrical Construction Agreement (collective bargaining agreement) were in effect, which proscribed union members from soliciting work in the absence of clearance from the local union, York advised Bunting and Harms that they were working adversely to the interest of the union. He then left, only to return with Steve Martin, the business manager and financial secretary of the union, so he could witness Bunting and Harms working for Langston Electric.
On March 10, 1995, York filed charges against Bunting, for violation of the Inside Electrical Construction Agreement, Article 7, Section 7.02,[2] the By-Laws of Local Union No. 576, Article 15, Section 10,[3] and the Constitution of the Union, Article 26, Section 1, Subsections- 5, 6, and 17.[4] Bunting was *134 also notified that a trial | aboard would convene on March 30, 1995, before which he would answer the charges against him. Charges were also filed by York against Harms. However, charges were not filed against Paul Guillory, another union member working for Langston Electric, because he had clearance from the Union to work there. At the hearing, Bunting was allowed to choose a union member of his choice to act as his counsel. Harms, who was to appear before the trial board that same night, acted as Bunting’s counsel. At the hearing, Bunting pled not guilty to the charges against him. No decision was rendered by the trial board following the conclusion of the hearing. The next day, March 31, 1995, Bunting resigned from the Union via notarized certified letter. He continued working for Langston Electric.
On April 3, 1995, the Union notified Bunting of the decision of the trial board, which found him guilty on all charges. The assessments under the charges totaled $13,000.00. However, the trial board offered Bunting an agreement whereby it
[A]grees to suspend all assessments, except $100.00 on each charge, if Mr. Bunting leaves employment with Roger Lang-ston, dba Langston Electric, immediately upon receipt of this letter.
Mr. Bunting will be on one year probation. If Mr. Bunting violates any Articles of the Constitution, By-Laws or Working Agreement of IBEW Local Union # 576, the full assessment will apply. In addition Mr. Bunting will also be responsible for court costs, legal fees and any other legal charges that it cost the Local Union to collect the above mentioned assessments. (This is in compliance with Article 15, Section 4 of the By-Laws.)
Harms also received notification of the decision against him on the same date. The Utrial board placed Harms, who had pled guilty to the charges against him, on probation for one year providing he resigned immediately from his employment with Lang-ston Electric.
The Union filed the instant suit against Bunting on December 18, 1995, alleging that he “promptly violated the terms of his ‘probation’ by continuing to work for a nonsigna-tory electrical contractor. The fines became immediately enforceable.” After a trial on the merits, the trial court rendered judgment in favor of Bunting, finding that the Union failed to prove it suffered damages and because of its determination that the fine was intended to penalize Bunting instead of compensating the union for its loss. A judgement was signed on May 19, 1997. The Union’s appeal followed.
ISSUES
The Union assigns three errors committed by the trial court. It argues that the trial court erred in concluding that the Union’s action against Bunting was an action in contract for damages instead of an action to enforce and collect a fine; the trial court erred in not deferring to the internal union decision making, which it alleges is final and binding on its members and officers; and, finally, the trial court erred in not awarding attorney’s fees.
DISCUSSION
In labor cases, where unions have levied fines on their members, the United States Supreme Court has distinguished between internal and external enforcement of union rules. In NLRB v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967), the Court held that a union did not commit an unfair labor practice |sby fining union members who crossed the picket line and worked during a strike. This, the Court held, was an internal union affair, which it would not disturb. However, unions may not fine former members, who resign lawfully during a strike, for returning to work during the strike. NLRB v. Granite State Joint Bd., Textile Workers Union of America, 409 U.S. 213, 93 S.Ct. 385, 34 L.Ed.2d 422 (1972). The Court held that this was the union’s attempt to enforce its rules externally and disallowed it. It has also been held that union members who crossed the picket line during a strike and then resigned and continued working, could only be fined by the union for those days that they worked prior to resignation. Communications Workers of America AFL-CIO Local 10414 v. Conley, 505 So.2d 894 (La.App. 2 *135 Cir.1987) and Communications Workers of America AFL-CIO Local 10414 v. Peters, 514 So.2d 725 (La.App. 2 Clr.1987). Thus, under the holdings of these cases, the Union had the right to internally enforce its rules against Bunting while he was a member of the Union. But, the Unión was prohibited from penalizing Bunting for his actions following his resignation. Therefore, we find that the trial court erred in dismissing the Union’s fines against Bunting while he was a member.
However, our next inquiry is whether the fines levied by the Union were reasonable. The United States Supreme Court has held that “[i]ssues as to the reasonableness or unreasonableness of [union fines against its members] must be decided upon the basis of the law of contracts, voluntary associations, or such other principles of law as may be applied in a forum competent to adjudicate the issue.” NLRB v. The Boeing Co., 412 U.S. 67, 74, 93 S.Ct. 1952, 1956-1957, 36 L.Ed.2d 752 (1973). In deciding the outcome of this case, the law to be applied is that pertaining to conventional obligations since the members of a union are bound by the constitution and by-laws of the union, which constitutes the contract between the members and the union itself. Ermert v. Hartford Ins. Co., 559 So.2d 467 (La.1990); United Broth. of Carpenters & Joiners of America, Local No. 1816 v. Stephens Broadcasting Co., 214 La. 928, 39 So.2d 422 (1949).
The Union has implied that since Bunting was bound by its constitution and by-laws, both of which provide for fines or penalties in the ease of an offense, the $13,-000.00 in fines should be considered stipulated damages. La.Civ.Code art. 2005. If this were true, the Union would be relieved of proving actual damages pursuant to La. Civ.Code art. 2009. However, this argument ignores La.Civ.Code art. 2012, which expressly allows a trial court to modify a stipulated amount of damages if they are “so manifestly unreasonable as to be contrary to public policy.” The argument also ignores the fact that no sum was stipulated to in advance by the parties. Contrary to the Union’s argument, we find that the fines imposed are not stipulated damages.
In Lombardo v. Deshotel, 94-1172 (La.11/30/94); 647 So.2d 1086, 1090, the supreme court discussed the two rights of a creditor under the. law of obligations: T) the right to exact specific performance, if practicable, La.Civ.Code art. 1986; and 2) the right to obtain damages, La.Civ.Code art. 1994. The court found:
When the creditor elects to sue the debt- or for damages, when specific performance is impracticable, or when the court refuses within its discretion to grant specific performance of an obligation to do, the fixing of the amount of the indemnity accorded as damages is made in two ways: (1) By the court, after the non-performance is established. C.C. Art. 1992; 2 Planiol no. 246; or (2) By the parties themselves, in advance, by a stipulated damages clause inserted in the contract. C.C. Art. 2005; Cf., 2 Planiol no. 246; See 4 Aubry et Rau, Droit Civil Francais, in 1 Civil Law Translations pp. 91-92 and pp. 120-122 (1965). bThe sum stipulated in the clause replaces the need for the damages to be set by the court. Stipulated damages may not be modified by the court unless they are so manifestly unreasonable as to be contrary to public policy, C.C. Art. 2012; Cf., 2 Planoil nos. 255-266; 4 Aubry et Rau at 121-122; 2 Litvinoff Sec. 9, or if the obli-gor has partially performed. C.C. Art. 2011.
Id. at 1090.
The court further went on to find, under the facts of that case, that the deposit provision of the purchase agreement at issue was a stipulated damages clause which contained the “essential ingredients” of a stipulation of damages: the clause was stipulated to in advance, it provided the sum to be recovered in case of non-performance, and it gave “rise to a secondary obligation for the purpose of enforcing the principal one.” La.Civ.Code art. 2005.
Under the facts of this case, one essential ingredient of a stipulated damages clause is missing from the constitution and by-laws of the Union. They provide no sum to be recovered in case an offense is committed by a union member. Since this essential element *136 is missing from the “contract” between the Union -and Bunting, we find that the fines imposed were not stipulated damages.
In order to recover damages, the Union must prove the actual damages suffered by it as a result of Bunting’s violation of its rules. La.Civ.Code art. 1995. If the amount of damages is “insusceptible of precise measurement” the amount to be awarded is left to the discretion of the court. La.Civ.Code art. 1999. Since unions are not prohibited from fining their members for offenses committed while they are members, and since the hearing afforded Bunting comported with the requirements |¡¡of 29 USC § 411(5),[5] the Union was not prohibited from fining him for the offenses he committed. Following the hearing, the trial board held the following:
AGREEMENT.Article 7, Section 7.02
Trial Board finds Kenneth Bunting guilty Assessed $2,000.00
BY-LAWS.'.Article 15, Section 10
Trial Board finds Kenneth Bunting guilty Assessed $5,000.00
CONSTITUTION.Article 26, Section 1, Subsection 5
Trial Board finds Kenneth Bunting guilty Assessed $2,000.00
CONSTITUTION.Article 26, Section 1, Subsection 6
Trial Board finds Kenneth Bunting guilty Assessed $2,000.00
CONSTITUTION.Article 26, Section 1, Subsection 17
Trial Board finds Kenneth Bunting guilty Assessed $2,000.00
However, the trial board agreed to suspend all but $100.00 per charge if Bunting left his employment with Langston Electric. The trial board also stated that Bunting would be on probation for one year.
At the trial on the merits, there was no testimony by the Union’s witnesses that it had suffered damages as a result of Bunting’s violations. Instead, Martin testified that there were no guidelines for deciding the fine and that the amount of the fine was strictly within the discretion of the trial board depending upon the violation. Martin further testified that he could recall no previous fine by the Union totaling $13,000.00. The highest fine he could remember was $5,000.00, and the highest fine he had ever been involved in imposing was $1,500.00. Tom McGinty, a member of Bunting’s trial board, explained that the trial board imposed the highest fine, $5,000.00, for Bunting’s violation of the Union’s by-laws since they were the Union’s own local rules. McGinty further testified that the fines assessed 1 gagainst Bunting were intended to penalize him for breaking the Union’s rules. Consequently, neither Martin nor McGinty considered the fines excessive. Although we agree that the Union has the right to fine Bunting for violations he committed as a member, we find the amounts imposed unreasonable. We, therefore, reduce the amount of the fines to $100.00 per violation, the amount the Union would have fined him had he agreed to terminate his employment with Langston Electric. We base our decision in part on the fact that the Union could not prove it was damaged to any great extent; that Bunting worked for Langston Electric for only a short time (approximately one month); that Harms received only a probated sentence (he agreed to resign from Langston Electric); and that even though Bunting continued to work for Langston Electric he resigned from the Union the day after the trial.
However, after reviewing the provisions under which Bunting was charged, we find that the charges against him should be reduced to three for the following reasons. Bunting was charged with violating Article 15, Section 10 of the by-laws, which provides that “[t]he handling of jobs for unemployed members shall be under the full supervision *137 and direction of the Business Manager. The Business Manager shall devise such means as are considered practical and fair in the distribution of available jobs to qualified members. Members shall not violate such established rules or plans.” Article 7, Section 7.02 of the Inside Electrical Construction Agreement provides “[t]he Union shall be the sole and exclusive source of referral of applicants for employment.” Thus, in actuality, we find that these two charges are one and the same. When questioned on this point, McGinty agreed that Article 7, Section 7.02 was an extension of Article 15, Section 10 of the by-laws. | ípThus, we find these two charges repetitive.
We further find that there was no evidence presented substantiating that Bunting was “[wjorking for an individual or company declared in difficulty with a L.U. or the I.B.E.W., in accordance with this Constitution.” Constitution Article 26, Section 1, Subsection 17. No evidence was presented by the Union that Langston Electric had been declared in difficulty by it or the I.B.E.W. Instead, Martin testified that he, as business manager of the Union, gave Langston the Union’s approval for opening a shop and using Guillory as his journeyman electrician. Later, Martin gave Langston permission to hire union hands to work in his shop. There was further testimony from Zach Ward, a union member, that he was given permission by the Union to work for Langston in July 1996. Thus, we find that this charge was unsubstantiated by the evidence.
ATTORNEY’S FEES
In its third assignment of error, the Union argues that the trial court erred by not awarding attorney’s fees. It asks that we remand the ease to the trial court so that such an award can be made.
Article 15, Section 4 of the by-laws provides that a member will be liable for reasonable attorney’s fees if the Union is forced to institute legal proceedings to recover fines levied against the member. Thus, since attorney’s fees were provided for contractually, they should be awarded. The evidence presented at the trial on the merits showed that the Union had expended $1,660.00 in attorney’s fees. That amount did not encompass work done the day prior to the trial, the trial, or work done on appeal. While we are cognizant of the fact that the actual attorney’s fees are | nnecessarily more, based on our decision herein finding the fine unreasonably high, we award attorney’s fees of $2,500.00.
CONCLUSION
For the foregoing reasons, the decision of the trial court is reversed and judgment is rendered in favor of the International Brotherhood of Electrical Workers Local No. 576, in the amount of $300.00 for the fines and $2,500.00 in attorney’s fees. Costs shall be divided equally between the Union and Bunting.
REVERSED AND RENDERED.

. The Salting Resolution provides in pertinent part, "[t]hat any member accepting employment by a nonsignatory employer, except as authorized by this Resolution, shall be subject to charges and discipline as provided by our Constitution and Bylaws.”

. Article 7, Section 7.02 provides that ”[t]he Union shall be the sole and exclusive source of referral of applicants for employment."

. Article 15, Section 10 provides "[t]he handling of jobs for unemployed members shall be under the full supervision and direction of the Business Manager. The Business Manager shall devise such means as are considered practical and fair in the distribution of available jobs to qualified members. Members shall not violate such established rules or plans.”

.Article 26, Section 1 provides that “any member may be penalized for committing any one or more of the following offenses:
[[Image here]]
(5) Engaging in any act or acts which are contrary to the member’s responsibility toward the I.B.E.W., or any of its L.U.’s, as an institution, or which interfere with the performance by the I.B.E.W. or a L.U. with its legal or contractual obligations.
(6) Working for, or on behalf of, any employer, employer-supported organization, or other union,- or the representatives of any of the foregoing, whose position is adverse or detrimental to the I.B.E.W.
[[Image here]]
(17) Working for any individual or company declared in difficulty with a L.U. or the I.B.E.W., in accordance with this Constitution.

. That statute provides that “[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a fuE and fair hearing.”