STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

RATCLIFF DEVELOPMENT, L.L.C.

VERSUS

OLLIE LEE CORPORATION

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 246090
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

**********

**JOHN E. CONERY**
**JUDGE**

**********

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and John E. Conery, Judges.

**AFFIRMED.**

**Kelvin G. Sanders**
**418 Desoto Street**
**Alexandria, Louisiana 71301-8305**
**(318) 487-0009**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    Ollie Lee Corporation

**Brian K. Thompson**
**Jessica Firment**
**Law Offices of Brian K. Thompson, A.P.L.C.**
**2915 Jackson Street**
**Alexandria, Louisiana 71301**
**(318) 473-0052**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
  **Ratcliff Development, L.L.C.**

**CONERY, Judge.**

This case involves a petition for specific performance by Ratcliff Development, L.L.C. (Ratcliff) against the Ollie Lee Corporation (Ollie Lee), seeking to enforce the terms of a Commercial/Land Agreement to Purchase/Sell (Purchase Agreement) executed on July 26, 2012, between Ratcliff and Ollie Lee for the sale of property located adjacent to Ratcliff's business operation at 3710 Lee Street, Alexandria, Louisiana (Property). The trial court ordered that Ollie Lee specifically perform under the terms of the Purchase Agreement and complete the sale of the property to Ratcliff. Ollie Lee now timely appeals the trial court's judgment signed on November 22, 2013.

## ASSIGNMENT OF ERROR

Ollie Lee asserts the following assignment of error, "[t]he trial court erred by ordering specific performance of the contract between the parties."

## LAW AND DISCUSSION

### *Standard of Review*

"[A]ppellate jurisdiction of a court of appeal extends to law and facts." La.Const. art. 5, § 10(B). The appellate court must determine whether the trial court committed an error of law or made a factual finding that was manifestly erroneous or clearly wrong. *Gibson v. State*, 99-1730 (La. 4/11/00), 758 So.2d 782, *cert. denied,* 531 U.S. 1052, 121 S.Ct. 656 (2000). The reviewing court must review the record in its entirety to make this determination. *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). "Consequently, when there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous." *Ardoin v. Firestone Polymers*, *L.L.C.*, p. 6, 10-245 (La.

1/19/11), 56 So.3d. 215, 219; *see also Harvey v. City of Eunice Police Dep't*, 10-1228 (La.App. 3 Cir. 4/6/11), 62 So.3d 290.

However, statutory interpretations are questions of law. *Shell v. Wal-Mart Stores, Inc.*, 00-997 (La.App. 3 Cir. 3/21/01), 782 So.2d 1155, *writ denied*, 01-1149 (La. 6/15/01), 793 So.2d 1244. Although a reviewing court defers to a trial court's reasonable decision on a question or matter properly within the trial court's discretion, if the trial court's decision is based on an erroneous interpretation or application of the law, such an incorrect decision is not entitled to deference. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983).

Questions of contractual interpretation are questions of law, which are subject to a de novo standard of review. *Mitchell v. Patterson Ins. Co.*, 00-612 (La.App. 3 Cir. 12/6/00), 774 So.2d 366. Contracts have the force of law between the parties, and the courts are bound to interpret them according to the common intent of the parties. La.Civ.Code arts. 1983 and 2045. If the words of the contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the true intent of the parties. La.Civ.Code art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050. Whether a contract is ambiguous is a question of law. *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-911 (La. 1/14/94), 630 So.2d 759.

### Terms and Negotiation Of The Purchase Agreement

On May 10, 2006, prior to the signing of the Purchase Agreement, Ollie Lee obtained a tax sale certificate to the Property. On March 1, 2012, Ollie Lee filed a

petition for monition, which was granted on March 6, 2012.[1] As required by law, a monition notice was published in the local newspaper beginning on March 22, 2012, and ending on May 13, 2012. The affidavit of publication was executed on May 15, 2012, which would have allowed for the finalization of the monition transferring title of the Property to Ollie Lee after July 14, 2012, the date marking sixty days from the last monition notice.[2] After July 14, 2012, all that was required for Ollie Lee to obtain full ownership of the Property was a clerk's certificate stating that the required monition notice had been properly filed in the local newspaper and a judgment confirming and homologating the May 10, 2006 tax sale of the Property to Ollie Lee.[3] Ollie Lee would have been required to transfer

---

[1] Louisiana Revised Statutes 13:4941 provides:

> The purchasers of property at sheriffs' sales, those made by authority of the court, those made by the syndics of insolvent estates, and finally those of any description which are made by the authority of justice, and all subsequent purchasers by a regular chain of title, may protect themselves from eviction of the property so purchased, or from any responsibility as possessors of the same, by pursuing the rules prescribed in R.S. 13:4942 through 13:4951.

[2] Louisiana Revised Statutes 13:4942 provides:

> The purchasers shall publish a monition calling on all persons who can set up any right to the property, in consequence of informality in any order, decree or judgment of the court, under which the sale was made, or any irregularity or illegality in the appraisement and advertisement, in the time and manner of the sale or for any other defect whatsoever, to show cause within thirty days from the date the monition is first published, why the sale so made should not be confirmed and homologated. The publication shall be given one time for movable property and two times for immovable property, provided that the second publication for immovable property shall be published not earlier than seven days before and not later than the day before the thirtieth day following the first publication.

[3] Louisiana Revised Statutes 13:4944 provides:

> The clerks of the respective courts from which the orders, decrees or judgments may have issued, and in virtue of which the sales ought to be homologated, which have been made, shall, on application of the buyer, grant this monition in the name of the state, and affix to it the seal of the court.

Louisiana Revised Statutes 13:4945 provides:

> At the expiration of the thirty days, the party obtaining the monition may

title to Ratcliff pursuant to the Purchase Agreement.

The evidence presented at trial confirmed that this process could have been completed prior to the signing of the Purchase Agreement by Ollie Lee on July 26, 2012, or the filing of Ratcliff's lawsuit on November 11, 2012. However, Ollie Lee did not file the required clerk's certificate until November 29, 2012. Ollie Lee obtained full ownership of the Property on December 3, 2012, when a "Judgment Confirming and Homologating Sale" was signed by the trial court.

The record confirms that Ollie Lee did not have the necessary clear title to the Property when the Purchase Agreement was signed on July 26, 2012, by Ollie Lee's Treasurer, Mr. Clarence Dabney, Jr., who is also a licensed real estate agent in the State of Georgia. Mr. Gregg Thompson, on behalf of Ratcliff, who is a licensed real estate agent in Louisiana, executed the Purchase Agreement on July 25, 2012. The two parties agreed to a sales price of $20,000.00 for the Property, which is located next to property owned by Ratcliff. The Property was a part of Ratcliff's plan for an office/storage complex, which was a part of an even larger development plan envisioned by Ratcliff.[4]

If the terms of the Purchase Agreement at issue are "clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La.Civ.Code art. 2046." *Gonsoulin v. Pontiff,* 11-177, p. 5

---

apply to the judge of the court, out of which the monition is issued, to confirm and homologate the sale, and the judge in case no cause is shown against the prayer for the monition, shall homologate and confirm the judicial sale in question; but before he does so confirm it, he shall be fully satisfied that the advertisements have been inserted in the newspapers, as already directed, and that the property has been correctly described, and the price at which it was purchased, truly paid. In case opposition be made to the homologation, and it should appear that the sale was made contrary to law, the judge shall annul it, otherwise to confirm it, as in case no opposition was made.

[4] On March 13, 2013, the trial court signed a judgment granting Ratcliff's request for a preliminary injunction prohibiting Ollie Lee from selling the Property to a third party until the resolution of this suit for specific performance.

4

(La.App. 3 Cir. 10/5/11), 74 So.3d 809, 812.  In this case, the Purchase Agreement is a standard form for the sale and/or purchase of commercial property provided by the realtor, Mr. David Moses, who is the listing real estate agent for the property.

The two provisions of the Purchase Agreement at issue are Paragraphs 16-17, which provide:

> 16.  TITLE AND CURATIVE WORK:  At the closing, **Seller** shall deliver to **Purchaser** a general warranty deed conveying to **Purchaser** a good, valid, merchantable, and insurable title to the subject property, free and clear of all mortgages and liens. **Purchaser**, their counsel or title company, at **Purchaser's** expense, shall have up to 30 days immediately following the inspection period to examine the title to the subject property and to obtain a survey of the subject property and notify **Seller** of all, if any, title defects and the requirements necessary to cure same.  **Seller**, at Seller's expense shall have up to 90 days immediately following said notice any title defects.  If **Seller** is unable to cure the title defects or make same insurable to **Purchaser's** satisfaction, **Purchaser** shall then have the right and option to: (1) waive the title curative requirements, accepting the title and its defects in its present condition and proceed to close this sale, subject only to any other remaining terms and conditions of this contract or (2) declare this contract null and void and receive the deposit in full, thus relieving **Purchaser** and **Seller** of any further obligation under this contract.
>
> 17. ACT OF SALE:  Time being of the essence, the act of sale before a Notary Public approved by the **Purchaser** shall be on October 23, 2012 (Date) or sooner, if mutually agreed in writing between **Seller** and **Purchaser**.  Any extension shall also be agreed to in writing by **Seller** and **Purchaser**.

(Emphasis in original)

The trial court in its written reasons discussed the pertinent paragraphs in the Purchase Agreement and stated:

> Under the terms of paragraph 16, Ratcliff had thirty days to conduct due diligence on the property and to notify Ollie Lee if there were any title defects.  Once the notification occurred, Ollie Lee had ninety days to fix any title defects.  If the title defect was not addressed, then Ratcliff would have the option to waive the defect and accept the property and title in its current condition and proceed to close or void the contract.  The provisions set forth in paragraph 16 [were] placed into operation of law upon delivery of adequate notice

5

to Ollie Lee.

The trial court then found that the provisions of Paragraph 16 were triggered by notice to Ollie Lee on August 14, 2012, of "title issues and defects." The notice was well within the thirty-day period, beginning on July 26, 2012, for Ratcliff to give such notice. Although Ollie Lee contended that it did not receive the required notice under Paragraph 16, the record evidence supports the trial court's conclusion that, "Based upon the testimony of the parties and the tone and demeanor of the witnesses, the Court finds that Ratcliff delivered notice to Ollie Lee on 14 August 2012 concerning the title issues and defects."

Exhibits and testimony submitted into evidence at trial support the trial court's finding that the required notice by Ratcliff, which triggered the terms of Paragraph 16, was received by Ollie Lee within the required thirty-day notice period. On August 14, 2012, Mr. Paul Maxwell, on behalf of Ratcliff, hand delivered correspondence to Mr. Moses, one of the realtors for Ollie Lee, which stated in pertinent part:

> Per the terms specified in Section 16 of the agreement, please be aware that our inspection of the title has revealed significant defect or defects that need to be addressed.

> Please accept this letter as our notification to the Seller of the need to have the defects cured to the satisfaction of our attorney Brian Thompson. Make note also of the time allowed for such curative work and extend the anticipated closing date to reflect that change in the agreement.

Mr. Moses testified at trial that he immediately emailed the August 14, 2012 letter from Ratcliff to Ollie Lee's representative, Mr. Dabney, and to Ollie Lee's attorney, Mrs. Ingrid F. Johnson. The receipt of the August 14, 2012 notice from Ratcliff by both Mrs. Johnson and Mr. Dabney is confirmed in correspondence sent the same day from Mrs. Johnson to Ollie Lee's second realtor, Mr. Chris

6

Naalbandian. This correspondence confirms and supports the trial court's finding that Mr. Dabney, the signee of the Purchase Agreement on behalf of Ollie Lee, had been placed on timely notice by Ratcliff that there was a title problem that required resolution prior to closing the sale on the Property. The email from Mrs. Johnson stated in pertinent part:

> This email comes as an overview of our discussion held on August 14, 2012 concerning the property located at 3710 Lee Street. My client, Mr. Clarence Dabney, Jr. of the Ollie Lee Corporation, has notified me of your request for clear title verification on the property. I will have [performed] that service prior to the closing. Since the property was acquired by my client through a tax sale, my office must, also file an additional required affidavit and judgment on the property prior to the closing. I will notify you once these documents have been filed, signed by the court, and the title examination completed.

On August 16, 2012, Mr. Gregg Thompson, signer of the Purchase Agreement for Ratcliff, responded to the email from Mrs. Johnson in an email to Mr. Moses clarifying Ratcliff's position stating, "From the looks of Mrs. Johnson's email it appears as if she is approaching the situation from a Title Exam perspective. We have already completed the examination and only need the Seller to provide an acceptable Monition of the Tax sale. Please confirm that is the Seller's understanding."

Having found that "Ollie Lee did receive adequate notice of the defect," the trial court further found that "the 90 day provision to fix the title defects was triggered," which allowed Ollie Lee until November 11, 2012, to cure the title defect by completing the monition process.

Ollie Lee argued at trial and in briefing to this court, in addition to claiming that it never received notice of the title defects from Ratcliff, "that the closing date as set forth in the original contract of 23 October 2012 was the drop-dead date unless excluded by mutual agreement of the parties pursuant to paragraph 17 of the

buy-sell agreement." The trial court found instead, "that notice was provided and that the only notice required to extend the closing date was notice from the purchaser to the seller that there was a title defect that needed to be remedied. The closing date was extended to fix the title defect." This court agrees.

Louisiana Civil Code Article 1759 requires, "Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation." Louisiana Civil Code Article 1777 provides, in pertinent part that "[a] term for the performance of an obligation may be express or it may be implied by the nature of the contract."

Under the provisions of the Purchase Agreement, once proper notice was given by Ratcliff, Ollie Lee was obligated to cure the title defect within the ninety-day provision of Paragraph 16. Considering that Ollie Lee was able to cure the title defect within three business days after the filing of this lawsuit by Ratcliff, the logical conclusion is that Ollie Lee could have cured the title defect between the time notice was given by Ratcliff on August 14, 2012, and the closing date of October 23, 2012, as determined according to Paragraph 17 of the Purchase Agreement.

Ollie Lee chose not to fulfill its obligation to Ratcliff under the terms of the Purchase Agreement and, therefore, cannot benefit from its failure to perform under the terms of the Purchase Agreement. Thus, we find that Ollie Lee's argument "that the closing date as set forth in the original contract of 23 October 2012 was the drop-dead date unless excluded by mutual agreement of the parties pursuant to paragraph 17 of the buy-sell agreement," to be without merit.

*Specific Performance*

Ollie Lee argues that the trial court erred in granting Ratcliff specific

8

performance under the provisions of Paragraph 21 of the Purchase Agreement. The trial court found:

> As a result when Ratcliff timely notified Ollie Lee that it was prepared to close the deal and accept the title with the defects, Ollie Lee was obligated to complete the sale. Ratcliff had chosen a proper option as set forth under the contract. As a result, the Court will order specific performance of the contract under the terms as set forth in the contract.

We agree and find that the trial court correctly determined that Ratcliff was entitled to specific performance of the Purchase Agreement under the terms of the contract. Paragraph 21 provides:

> **BREACH OF AGREEMENT BY SELLER:** In the event **Seller** fails to comply with this agreement, for any reason other than **reasonable inability to deliver a merchantable title within the time specified**, **Purchaser** shall have the right to demand specific performance and any cost and/or fees, including expenses and reasonable attorney's fees incurred as a result of this agreement or breach thereof rendered by a court of competent jurisdiction or by mutual agreement with **Purchaser**.[5]

(Second emphasis ours.)

> Louisiana Civil Code Article 1986 provides:
>
> Upon an obligor's failure to perform an obligation to deliver a thing or not to do an act, or **to execute an instrument, the court shall grant specific performance plus damages for delay** if the obligee so demands. If specific performance is impracticable, the court may allow damages to the obligee.
>
> Upon a failure to perform an obligation that has another object, such as an obligation to do, the granting of specific performance is at the discretion of the court.

(Emphasis added.)

The record reflects that from August 14, 2012, until October, 24, 2012, Ollie Lee represented to Ratcliff that it intended to cure the title problem and proceed

---

[5] The terms of Paragraph 21 allow an award of attorney fees and expenses to Ratcliff. In its judgment, the trial court did assess costs to Ollie Lee, but made no mention of expenses or attorney fees. Likewise, Ratcliff has not sought expenses or attorney fees on appeal, and hence we are precluded from review of this issue. Uniform Rules—Courts of Appeal, Rule 2–12.4.

with the sale. In an effort to move the process along, Mr. Brian Thompson, Ratcliff's attorney, performed some of the curative work on behalf of Ollie Lee and succeeded in obtaining a release of the mortgage on the Property held by Security First National Bank, now Regions Bank, on October 23, 2012. Mr. Brian Thompson's office informed Mrs. Johnson, Ollie Lee's attorney, on both October 24, 2012, and October 26, 2012, that it was in possession of the original release from Regions Bank and sought instructions for the original release to be transmitted to Mrs. Johnson for recording in the public record.

An October 24, 2012 email correspondence between Mr. Moses and Mr. Gregg Thompson indicated that the parties were hoping to close the sale on October 26, 2012. The plan was to hold $4,000.00 in escrow "to allow the Seller to complete the title curative work." However, also on October 24, 2012, in an email from Ms. Angela Goldman, a member of the staff of counsel for Ratcliff, Mr. Brian Thompson learned for the first time, via Debbie at Mrs. Johnson's office, that Mrs. Johnson was not a title agent. It was also confirmed that Mrs. Johnson could not write an owner's policy, but without the completion of the monition process, supposedly an owner's policy could not be issued for the Property.

In response to this news, Mr. Gregg Thompson of Ratcliff began to suspect that Ollie Lee had no intention of completing the monition process prior to November 11, 2012, the end of the ninety-day curative period as provided in paragraph 16 of the Purchase Agreement. This suspicion prompted an October 26, 2012 email from Mr. Gregg Thompson, on behalf of Ratcliff, to Ollie Lee's realtor Mr. Moses, indicating that Ratcliff intended to move forward "to close on the property in [its] current condition."

The closing was then tentatively postponed until 3:00 p.m. on Monday,

October 29, 2012. The 3:00 p.m closing time was communicated to Mr. Moses. However, approximately three-and-a-half hours before the closing was to take place, Mr. Moses informed Ratcliff that he had spoken with Mr. Dabney, and Ollie Lee would not close the sale that afternoon. Mr. Moses indicated that Mr. Dabney "would like to have a clear title on the property before he closes. You can call him and discuss what you would like to have Ms. Johnson complete for him."

On the same day, October 29, 2012, Ratcliff sent an email to Mr. Moses reiterating that Ratcliff was willing and able to proceed with the act of sale, prior to November 11, 2012. The email stated in pertinent part:

> Further, please see Section 16 of the contract. This paragraph gives the Purchaser the option to purchase the property with the title defects or void the contract. Our client desires to purchase the property with the title defects pursuant to the contract.

> Our client has no intention of abandoning this sale, therefore, please consult with Mr. Dabney and confirm firstly, (1) is he represented by Ingrid Johnson because I cannot get an answer; and (2) when is he available to close prior to November 11, 2012.

A meeting was held on October 31, 2012, between counsel for Ollie Lee, Mrs. Johnson, and counsel for Ratcliff, Mr. Brian Thompson, wherein Mrs. Johnson informed Mr. Thompson that Ollie Lee did not intend to complete the sale of the Property to Ratcliff. In response, on November 6, 2012, Ratcliff, through its attorney, Mr. Brian Thompson, sent formal notice via overnight delivery of its intention to exercise option one of Paragraph 16, which reads, "(1) waive the title curative requirements, accepting the title and its defects in its present condition and proceed to close this sale, subject only to any other remaining terms and conditions of this contract."[6] Ratcliff sought an answer by November 8, 2012, which never

---

[6] In connection with this correspondence, Ratcliff also delivered to Ollie Lee a check in the amount of $13,265.40, given as payment of the sales price of $20,000.00, less City taxes

11

came. As previously indicated, Ollie Lee obtained full ownership of the Property on December 3, 2012, after filing the necessary paperwork on November 29, 2012, and a signed judgment completing the monition and vesting Ollie Lee with clear title was signed on December 3, 2012.

A panel of this circuit considered a similar factual situation in the case of *Carr v. Whitten,* 12-758 ( La.App. 3 Cir. 12/5/12), 104 So.3d 763. *Carr* involved a purchase agreement for the sale of a mobile home. The purchase agreement required the seller to obtain a certificate of title from the Department of Motor Vehicles prior to the scheduled date of the act of sale. Due to past due sales taxes and penalties, the seller failed to obtain the certificate and, after the closing date, advised the buyers she no longer wanted to sell the mobile home.

The buyers brought suit seeking stipulated damages pursuant to the provisions of the purchase agreement, which allowed for ten percent of the purchase price, in this case $14,000.00, plus attorney fees. The trial court found in favor of the buyers, and the case was affirmed on appeal. This court found that the seller simply failed to fulfill her obligation to obtain clear title under the contract and stated:

> This is not a situation involving an inability to produce merchantable title. Rather, Ms. Pitts failed to do so because of her own inaction, a failure to pay taxes, penalties, and interest associated with her purchase of the mobile home. Her responsibility to ensure the payment of that fiscal obligation arose, not at the time of the agreement to buy or sell, but two years earlier at the time she purchased the mobile home. Additionally, when she learned of the discrepancy in the attempt to complete the property transaction, she failed to pay those fees and produce the title.

*Carr*, 104 So.3d at 767 (footnote omitted).

---

owed since 2005, the realtor's commission, and the cost of cancelling the tax lien and the mortgage from the public record, per the Purchase Agreement.

The *Carr* court also affirmed the trial court's determination that the seller was at fault based on the application of La.Civ.Code art. 1772, which provides, "[a] condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment." In other words, the seller "defaulted on her obligation to produce merchantable title under the agreement to buy and sell." *Carr*, 104 So.3d at 767.

The failure of Ollie Lee to complete the monition process and obtain clear title, similar to the inaction of the seller in *Carr*, does not reflect Ollie Lee's "reasonable inability to deliver a merchantable title within the time specified," as stated in Paragraph 21 of the Purchase Agreement. Also, like *Carr*, Ollie Lee's actions in failing to cure the title defect, although it was in their power to do so, requires the application of La.Civ.Code art. 1772. Ollie Lee had a duty under the terms of the Purchase Agreement to timely complete the monition process and cure the title defect, which was subject to a term pursuant to La.Civ.Code art. 1777.

The record reflects that this goal could have been easily accomplished prior to the October 23, 2012 original closing date and prior to Ratcliff's lawsuit. Thus, Ollie Lee's failure to perform under the terms of the Purchase Agreement warrants the remedy sought by Ratcliff of specific performance.

In *Whitbeck v. Champagne*,14-245 (La.App. 3 Cir. 10/1/14), 149 So.3d 372, a panel of this court affirmed the trial court's ruling granting specific performance for the breach of a residential purchase agreement. The trial court ordered the Champagnes to purchase the Whitbecks' home under the terms of the residential Purchase Agreement. The panel discussed La.Civ.Code art. 1986 and the jurisprudence applicable to a breach of a contract that contains a provision for specific performance:

13

> Upon an obligor's failure to perform an obligation to do, the granting of specific performance is at the discretion of the court. *See* LSA–C.C. art.1986. Under Louisiana's civil law system, specific performance is the preferred remedy for breach of contract. An obligee enjoys the right to demand, insofar as is practicable, the specific performance of the obligation. *Lombardo v. Deshotel,* 94–1172 (La.11/30/94), 647 So.2d 1086, 1090; *see* LSA–C.C. art.1986.

*Whitbeck*, 149 So.3d at ___ (quoting *Charter Sch. of Pine Grove v. St. Helena Parish Sch. Bd.*, 07-2238, p.14 (La.App. 1 Cir. 2/19/09), 9 So.3d 209, 222).

We therefore find that the trial court correctly interpreted the clear terms of the Purchase Agreement. Upon Ollie Lee's failure to cure the title defect, Ratcliff had the option to seek specific performance, which required Ollie Lee to complete the act of sale under the terms of the Purchase Agreement. The trial court correctly found that the remedy of specific performance was appropriate based on the testimony and evidence presented at trial.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment in favor of Ratcliff Development, L.L.C. and against Ollie Lee Corporation ordering specific performance of the Purchase Agreement pursuant to its terms. Costs of this appeal are assessed to Ollie Lee Corporation.

**AFFIRMED.**

14